**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

ANDREW R. PERRONG
1657 THE FAIRWAY #131
JENKINTOWN, PA 19046

        Plaintiff

vs.

HOPE TREE PROPERTIES LLC
502 WEST 7TH STREET, SUITE 100
ERIE, PA 16502,

and

DANIEL KESSLER
1501 COTSWALD CT
WEST CHESTER, PA 19382

        Defendants.

Case No.

JURY TRIAL DEMANDED

## COMPLAINT

### Preliminary Statement

1.     Plaintiff Andrew R. Perrong ("Plaintiff"), brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance calling practices.  *See Mims v. Arrow Fin. Servs.*, *LLC,* 132 S. Ct. 740, 745 (2012).

2.     Plaintiff alleges that Hope Tree Properties LLC, and its owner, Daniel Kessler, commissioned a series of automated, illegal telemarketing "robocalls" to originate new customers for their real estate consulting company. These calls were sent to telephone numbers listed on the National Do Not Call Registry and for which the called party is charged for the

1

calls, like Mr. Perrong's number, which is prohibited by the TCPA. The calls were made either directly by Kessler, or his agents, for his company Hope Tree Properties LLC.

3.　　The Plaintiff never consented to receive such calls, which were placed to him for telemarketing purposes.

## Parties

4.　　Plaintiff Andrew R. Perrong is a Pennsylvania resident, and a resident of this District.

5.　　Defendant Hope Tree Properties LLC, is a Pennsylvania company that makes telemarketing calls to this District, just as it did with Plaintiff.

6.　　Defendant DANIEL KESSLER is an individual who is a resident of Pennsylvania.

## Jurisdiction & Venue

7.　　The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

8.　　Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls to the Plaintiff were placed into this District.

## The Telephone Consumer Protection Act

9.　　In 1991, Congress enacted the TCPA to regulate the explosive growth of the automated calling industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

2

The TCPA Prohibits all Automated Calls To Protected Numbers

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." *See* 47 U.S.C. § 227(b)(1)(A)(iii).

11.     Congress singled out these services for special protection either because Congress realized their special importance in terms of consumer privacy and therefore protected them (as in the case of cellular phones), or because the numbers are assigned to services, like Mr. Perrong's VoIP service, for which the called party is charged, thus shifting the cost of automated or prerecorded messages onto consumers. *See Barr v. Am. Ass'n of Pol. Consultants, Inc*, 140 S. Ct. 2335, 2363, (2020) (Gorsuch, J. & Thomas, J., concurring in part and dissenting in part).

12.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and are inconvenient.

13.     Under the TCPA, a text message is treated as a call. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A).  *See* 47 U.S.C. § 227(b)(3).

15.     This cause of action applies to users of any one of the four protected services (pager, cellular, specialized mobile radio [i.e. radiotelephony locator beacons or dispatch

systems], or another radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which the called party is charged for the call. *See Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *6 (E.D. Pa. July 15, 2021).

16.     "Non-emergency prerecorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A)] are permissible only with the prior express consent of the called party." This includes *any* non-consensual calls made for non-emergency purposes, regardless of *whether or not* they are informational, telemarketing, telephone solicitations, or similar such calls. *See* FCC Enforcement Advisory: *Tel. Consumer Prot. Act Robocall & Text Rules - Biennial Reminder for Pol. Campaigns About Robocall & Text Abuse*, 31 FCC Rcd. 1940, 1941 n.6 (2016) [hereinafter FCC Advisory].

17.     Importantly, this Court has already held that non-consensual, non-emergency calls placed using an ATDS or a prerecorded voice to the *same telephone number at issue in this case* violate 47 U.S.C. § 227(b)(1)(A), regardless of the purpose of the call. *Victory Phones*, 2021 WL 3007258, at *6 (rejecting claim that non-commercial survey calls were exempt and holding that "[T]he operative language of the TCPA is unambiguous. Section 227(b)(1)(A) prohibits placing artificial and pre-recorded voice calls to a variety of telephone numbers."). To hold otherwise would read the words "any person" and "any call" out of the statute. *See id.*

The National Do Not Call Registry

18.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

4

19.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

20.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

## Factual Allegations

21.     Defendant Hope Tree Properties LLC operates a real estate consulting company that offers to buy and sell houses, including discussing options for foreclosure.

22.     To generate leads, Hope Tree makes telemarketing calls to customers who have never had never had a relationship with Hope Tree, who have never consented to receive their calls, and indeed have never even owned the properties Hope Tree attempts to provide its services for.

23.     Daniel Kessler owns and operates Hope Tree.

24.     One of the strategies used by Defendants involves the use of automated calls.

25.     Defendants send out these call blasts *en masse* to telephone numbers throughout the area, hoping they reach someone interested in their real estate services.

Personal Liability Under The TCPA

26.     Defendant Daniel Kessler was at all times relevant the owner of Hope Tree and is therefore responsible for any conduct purportedly carried out only in such name.

27.     Under the TCPA, an individual such as Kessler may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, *inter alia*:

5

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user *as well as of that person*.

47 U.S.C. § 217 (emphasis added).

28.     Kessler personally participated in the actions complained of by: (a) envisioning, authorizing, supervising, controlling, and directing the marketing conduct described herein, including the telephone conduct; (b) personally selecting the vendor that Hope Tree used to dial phone numbers and telemarketing; (c) verifying and potentially drafting the scripting that would be used on the calls; (d) selecting the dialing equipment, telephone services, manpower, and suppliers of the same used to make the calls; (e) personally placing at least one of the calls; (f) personally setting up accounts and telephone services for making the calls; (g) verbally insulting the Plaintiff and refusing to place the Plaintiff on the internal Do Not Call List; and (h) leading, supervising, and ensuring (non)compliance and verbal harassment with Hope Tree's legal and regulatory obligations, including the TCPA.

The Calls to Mr. Perrong

29.     Plaintiff Perrong is a "person" as defined by 47 U.S.C. § 153(39).

30.     Plaintiff's telephone number (the "Number"), 215-947-XXXX, is on the National Do Not Call Registry and has been continuously since 2005.

31.     The Number has also been listed on the Pennsylvania Do Not Call Registry.

32.     Defendants are not registered as telemarketers with the Attorney General of Pennsylvania.

33.     Despite this registration, the Defendants sent at least three calls and two text messages placed using an ATDS and a prerecorded voice to Plaintiff on February 8, 14 and 15, 2023 from the Caller IDs 267-314-6729, 267-367-5031, 610-553-3385, and 717-471-5718.

34.     The Number is assigned to a Voice over Internet Protocol (VoIP) telephone service, which allows for voice calls to be placed over a broadband Internet connection.

35.     That Number, which is assigned to a VoIP telephone service, is charged for each call it receives.

36.     The VoIP telephone service for the Number is Anveo.

37.     The service charges a ring charge of $0.005 for the provision of Caller ID Name lookup information for each call placed to the Number, even if the call is not answered.

38.     The service also charges a per-minute charge of $0.004 per minute for voice charges for each minute of talk time, including voicemail time, for each call placed to the Number.

39.     The service charges $0.01 for each text message sent or received.

40.     The Number is therefore "assigned to a . . . service for which the called party is charged for the call" and any calls placed to that number are subject to the restrictions enumerated in 47 U.S.C. § 227(b)(1)(A)(iii).

41.     Despite this, Defendants placed the first call to the Number from the caller ID 267-314-6729 on February 8, 2023.

42.     The telephone service provider for this Caller ID is Level 3 Communications.

43.     Plaintiff answered this call, but there was nobody on the other side and the call disconnected after 7 seconds of silence.

44.     Despite this, Defendants placed the next call to the Number from the caller ID 267-367-5031 on February 14, 2023.

45.     When called back, the telephone number 267-314-6729 leads to the same offshore call center as the 267-367-5031 number.

46.     The telephone service provider for this Caller ID is Peerless Telecom.

47.     When Plaintiff answered the call on February 14, he heard a brief snippet of pre-recorded hold music before his call was connected to a human being.

48.     Approximately 8 seconds later, the Plaintiff spoke with an offshore bloke with a heavy accent named "John" inquiring if Plaintiff "still owned a property."

49.     "John" stated that he was calling from a group of "real estate investors and sellers."

50.     In an effort to identify the caller, the Plaintiff attempted to ascertain the name of the company and who these investors and his "partners" were, but was told that the only name was "Dan."

51.     Plaintiff provided a unique email address in order to ascertain the caller's identity. Plaintiff made clear that he would call the Defendants back if he was interested and that the Defendants were only to send him an email, not call or text him.

52.     Despite this clear revocation of any purported consent and indication he did not want to be contacted, Plaintiff received a text message from the Caller ID 610-553-3385 at 10:03 PM on February 14.

53.     The telephone service provider for this Caller ID is Twilio.

54.     The message stated:

```
Hi Stefania,

Your phone appointment to receive a cash offer for
your home, [redacted] has been confirmed for
Wednesday, February 15, 2023 4:30 PM. Please let us
know if you have any questions in the meantime. We
look forward to speaking to you soon.

- Dan
```

55.     Plaintiff did not respond to this message. Despite this, the Plaintiff received another message from the same caller ID at 2:30 PM on February 15.

56.     That message stated:

```
Hi Stefania. This is just a reminder for your home
cash offer phone appointment today on Wednesday,
February 15, 2023 4:30 PM for your home [redacted].

Please reply "yes" to confirm you will be available.
I'll be calling you.

- Dan
```

57.     Level 3 Communications, Peerless Telecom, and Twilio do not place calls, nor do they "register" telephone numbers. Rather, they provide the telephone service for the aforementioned caller ID numbers. Individual subscribers like Defendants can then connect this telephone service to an ATDS and use the ATDS to place calls, either directly through an on-premise ATDS like ViciDial or through the use of another vendor that provides the ATDS software through a web interface like CallFire.

58.     Unlike most telephone service providers, however, these providers support and indeed encourages using programmable communications software, including ATDS systems like ViciDial and CallFire, on their platforms. By contrast, most other telephone providers, including Plaintiff's, expressly forbid use of their services in such a way in their terms of service. *See, e.g.*, *Terms of Use*, ANVEO (May 24, 2018), http://www.anveo.com/consumer/legal.asp ("Use of Predictive Dialers, Auto Dialers, Telemarketing Devices, Lead Generators and other simular programs is prohibited. All calls made using such programs will be charged $2 per minute rate (60/60 billing interval) and $0.1 per dial attempt.").

59.    Again, Plaintiff did not respond to the text message or reply "yes." Despite this, Plaintiff received a call on February 15, at 4:28 PM from the caller ID 717-471-5718.

60.    During the call, Defendant Dan Kessler was on the line and identified himself as such and stated that he was calling from "Hope Tree Properties."

61.    Immediately, Plaintiff stated for the Defendant not to call Plaintiff again.

62.    Defendant Kessler launched a verbal tirade on the Plaintiff in response too explicit and inappropriate to set forth in unredacted form in a federal court pleading. He stated,

> "We have an appointment. We have an appointment set for today. . . . F**k you, you f*****g c**t! Eat s**t you f*****g c**t! Don't f*****g tell me you didn't do this and you gotta do that and I'm gonna sue you. Come find me in person. Don't be such a f*****g c**t. . . . This call is being recorded. I'm going to come after you and f*****g nena (inaudible)."

63.    The call could not possibly have been targeted toward the Plaintiff since the Plaintiff does not own the property for which Defendants attempted to sell their real estate services.

64.    Rather, it appears Defendants selected numbers to be called sequentially (or possibly randomly) and then used publicly available databases to identify any potential properties the user of the of the telephone number might own when such randomly or sequentially selected call was answered.

Defendants' Use of an ATDS

65.    The calls were conducted using an Automatic Telephone Dialing System (ATDS) and in at least the first three calls with a pre-recorded voice or pre-programmed, canned text messages. As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers

to be called using a random or sequential number generator. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

66.     The Third Circuit recently clarified that "Congress envisioned a broad understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis of whether an ATDS was *used* in violation of the TCPA centers around "whether the defendant employ[s] [ATDS] capacities to make automated calls," *Panzarella v. Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that Congress intended to "ban all autodialed calls" because Congress "found autodialer technology to be uniquely harmful." *Id.* at 879 (cleaned up).

67.     In enacting the ATDS prohibition, the Third Circuit cited favourably to Congressional understanding "that telemarketers could transform ordinary computers into autodialers through minor and inexpensive modifications," including by "relying on computerized databases containing telephone numbers during their dialing campaigns." *Id.* at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS prohibition, Congress intended to remedy the problems caused by callers using computer software to dial numbers randomly or sequentially from a list or database. *See id.*

68.     Under *Panzarella*, a system that uses a random or sequential number generator to produce each telephone number to be called from a list of telephone numbers, and then dials those numbers, is by definition an ATDS. This is so even if the telephone numbers in the list themselves were not randomly or sequentially generated. *See id.* at 879-880.

69.     The system(s) Defendants used to place the calls to Plaintiff is/are an ATDS because it would be illogical to use some non-automatic trigger to dial the number from a list,

have the Plaintiff answer it, and only then connect it to a human being or play a pre-recorded message.

70.     Furthermore, audible pauses, clicks, hold music, and no human being on the other side of the line when the call is answered are hallmark indicia of ATDS systems, particularly ones that predictively vary the automatic calling rate to optimize time human representatives spend. It supports the inference that Defendants used an ATDS, such as one which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a preproduced list." *Facebook*, 141 S. Ct. at 1171 n.7.

71.     The calls were placed by large, bulk telephone service providers like Level 3 Communications, Peerless Telecom, and Twilio. In particular, Twilio operates a computerized platform designed for making high volumes of automated, sequential or random calls. Twilio's website boasts the ability to make calls with "indefinite scaling," support up to 250 participants at a time, and mask caller information. *See Voice With the Power of Programmability*, Twilio, https://www.twilio.com/voice [https://archive.ph/ktY0A].

72.     Indeed, Twilio's documentation outlines in detail the computer programming code necessary to make automated calls from a list, including a computerized database of numbers, at a rate of one call per second, in addition to the code needed in order to tell the system what action to take depending on if a party answers. *See Making Calls*, Twilio Docs, https://www.twilio.com/docs/voice/make-calls [https://archive.ph/kVbSz].

73.     As this Court has remarked, other courts have held, post-*Facebook*, that allegations similar to those as here of the absence of a relationship between the parties, pauses and delays in audio, inaccurate list data, and the random or automated nature of the automation device, are all indicia of use of a random or sequential dialing device that gives rise to the

inference at the pleadings stage that an ATDS was used to make the calls. *See Camunas v. Nat'l Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D. Pa. May 26, 2021). Post-*Facebook*, ATDS issues are summary judgment ones.

74.     No facts exist here to support the conclusion that Defendants were calling a curated list of past individuals they have previously interacted with. Plaintiff does not and has never owned the property Defendants were looking to provide real estate services. By contrast to a company that calls phone numbers *en masse* to the public, a company that uses a select list of customers based on specific accurate criteria does not place calls using an ATDS because such calling uses a database targeting existing customers' information rather than computer-generated tables or lists of individuals to be called. *See Panzarella*, 37 F.4th at 881–882.

75.     *Panzarella* stands for the proposition that, when using a list of numbers to contact people, the computer must *use* something other than a random or sequential number generator to select the numbers to be called. Other triggers, such as birthdays or account delinquency, are neither random nor sequential, and thus *using* a dialer to place calls with such criteria is not using an ATDS. *See id.* at 879-881.

76.     *Facebook* did not use an ATDS because it did not use random or sequential means to select numbers to send text messages to. Rather, it used *a specific user action*, compromised account security, to send the messages. *Facebook*, 141 S. Ct. at 1168. In other words, an account data breach, not random or sequential selection, was used to send the text message. Similarly, the Ninth Circuit recently held in *Brickman v. United States* that Facebook did not use an ATDS when it sent birthday text messages because the *birthdays*, not random or sequential number generators, were used to draw numbers to be called. 56 F.4th 688 (9th Cir. 2022).

77.     Likewise, the defendant in *Panzarella* did not *use* an ATDS because it used the select criteria of delinquent borrowers to dial numbers. Put another way, delinquency, not random or sequential means, was used to select numbers from a list of numbers associated with student loan accounts and then dial them. *Panzarella*, 37 F.4th at 882.

78.     Plaintiff is ignorant of the exact process by which the Defendants used the system they connected to the various services. However, no facts exist to show that Defendants called the Plaintiff in a targeted manner. Moreover, "The newly clarified definition of an ATDS is more relevant to a summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No. 3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); *accord Miles v. Medicredit, Inc.*, No. 4:20-cv-01186-JAR, 2021 WL 2949565 (E.D. Mo. July 14, 2021).

79.     Plaintiff has sufficiently pled at the pleading stage more than adequate facts to support a showing that the system Defendants used to contact the Plaintiff meets the definition of an ATDS and that Defendants used random or sequential methods to select numbers to be called.

80.     The most obvious such non-random and non-sequential criteria, persons actually interested in purchasing real estate services from the Defendant and who had provided their information to the Defendant, is obviously lacking here since the Plaintiff has not owned the property sought to have services provided to it nor interacted with the Defendant. Moreover, if Defendants do proffer a potential criterion other than random or sequential selection used to make the calls, Plaintiff is nevertheless entitled to discovery on that issue to determine whether or not such a criteria was used in the Plaintiff's case and whether or not it was truly neither random nor sequential. This is a summary judgment issue, not a motion to dismiss one.

Defendants' Conduct Violates the TCPA

81.     The communications received by Plaintiff demonstrate that they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services as they sought to have him purchase and invest in Defendants' real estate services. The calls therefore qualified as telemarketing. 47 C.F.R. § 64.1200(f)(12).

82.     The Plaintiff never provided his consent or requested the calls.

83.     Defendants called multiple times, despite Plaintiff's number being on the National Do Not Call Registry.

84.     Based on Defendant Kessler's verbal tirade, it is evident that Defendants do not maintain Do Not Call policies and procedures as required by law.

85.     Based on Defendant Kessler's verbal tirade, it is evident that Defendants also do not maintain an internal Do Not Call list, since Plaintiff clearly did not want to be called but Defendants called anyway, including after he had made clear any communications should be through email only.

86.     The calls were not necessitated by any emergency.

87.     Plaintiff was harmed by the calls. At least one of the calls occurred while he was attending a law school class. He was temporarily deprived of legitimate use of his telephone and his privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover, they injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

**Legal Claims**
**Count One:**
**Violation of the TCPA's Prohibition Against Automated Calling**
**Via Pre-Recorded Message**

88.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

89.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by sending calls, except for emergency purposes, to the telephone number of Plaintiff using a prerecorded voice.

90.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

91.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls or sending messages, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

92.     The Defendants' violations were willful and/or knowing.

**Count Two:**
**Violation of the TCPA's Prohibition Against Automated Calling**
**With an Automatic Telephone Dialing System (ATDS)**

93.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

94.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the telephone number of Plaintiff using an ATDS.

95.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

96.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

97.     The Defendants' violations were wilful and/or knowing.

**Count Three:**
**Violation of the Pennsylvania Telemarketer Registration Act**

**73  Pa. Cons. Stat. § 2241**

98.     By placing at least three telemarketing calls to the Plaintiff without registering as telemarketers under Pennsylvania law, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2243. Moreover, by failing to identify themselves in the calls, Defendants, jointly and severally, violated 73 Pa. Cons. Stat. § 2245.1.

99.     This constitutes three violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law. 73 Pa. Cons. Stat. § 2246(a).

100.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the Pennsylvania Telemarketer Registration Act (PTRA), 73 Pa. Cons. Stat. § 2241, including by making calls to Plaintiff's number, on the Pennsylvania Do-Not-Call registry, without registration.

101.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the PTRA, 73 Pa. Cons. Stat. § 2241, Plaintiff is entitled to an award of $300 in damages for each and every call made to his telephone number in violation of the statute, pursuant to the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201. *See* 73 Pa. Cons. Stat. § 2246(a).

102.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the PTRA in the future.

### Count Four:
### Violation of the TCPA's Implementing Regulations
### Codified at 47 C.F.R. § 64.1200

103.     By placing at least three telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, Defendants, jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

104.     This amounts to nine violations since Defendants committed three violations per call. The first violation is calling a number on the national Do-Not-Call registry. 47 C.F.R. § 64.1200(c)(2). The second violation is by calling Plaintiff without having a Do-Not-Call policy

in place. 47 C.F.R. § 64.1200(d)(1). The third violation is by calling Plaintiff without maintaining the Plaintiff on their internal Do-Not-Call list. 47 C.F.R. § 64.1200(d)(6).

105.     The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute at least nine violations of the TCPA, 47 U.S.C. § 227(c), codified at 47 C.F.R. § 64.1200, by, *inter alia*, refusing to scrub against the National Do-Not-Call registry, refusing to maintain Mr. Perrong's number on an internal Do-Not-Call list, and failing to have a Do-Not-Call policy.

106.     As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on their behalf's violations of the TCPA, 47 U.S.C. § 227(c), Plaintiff is entitled to an award of $500 in damages for each and every call and violation made to his telephone number in violation of the TCPA's implementing regulations codified at 47 C.F.R. § 64.1200, pursuant to 47 U.S.C. § 227(c)(5)(B).

107.     Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(c), by making calls in violation of any of the TCPA's implementing regulations in the future.

108.     The Defendants' violations were knowing and/or willful. Accordingly, the Plaintiff seeks up to treble damages of the $500 per violation award, as provided in 47 U.S.C. § 227(b)(3)(B).

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

A.     Injunctive relief prohibiting Defendants from calling telephone numbers using an artificial or prerecorded voice and/or ATDS.

B.     Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5).

C.     Because of Defendants' violations of the PTRA, Plaintiff Perrong seeks for himself $300 in damages for each violation, pursuant to 73 Pa. Cons. Stat. § 201-9.2(a).

D.     Such other relief as the Court deems just and proper.


**Plaintiff requests a jury trial as to all claims of the complaint so triable.**


Dated: **February 15, 2023**

_____/s/_____

Andrew R. Perrong
*Plaintiff Pro-Se*
1657 The Fairway #131
Jenkintown, PA 19046
Phone: 215-791-6957
Facsimile: 888-329-0305
andyperrong@gmail.com

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ANDREW R. PERRONG<br>1657 THE FAIRWAY #131, JENKINTOWN, PA 19046 | HOPE TREE PROPERTIES LLC<br>502 WEST 7TH STREET, SUITE 100, ERIE, PA 16502 |

**(b)** County of Residence of First Listed Plaintiff   MONTGOMERY
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   ERIE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
ANDREW R. PERRONG (PRO SE); 1657 THE FAIRWAY #131, JENKINTOWN, PA 19046; 215-791-6957

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance<br>[ ] 120 Marine<br>[ ] 130 Miller Act<br>[ ] 140 Negotiable Instrument<br>[ ] 150 Recovery of Overpayment & Enforcement of Judgment<br>[ ] 151 Medicare Act<br>[ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>[ ] 153 Recovery of Overpayment of Veteran's Benefits<br>[ ] 160 Stockholders' Suits<br>[ ] 190 Other Contract<br>[ ] 195 Contract Product Liability<br>[ ] 196 Franchise | **PERSONAL INJURY**<br>[ ] 310 Airplane<br>[ ] 315 Airplane Product Liability<br>[ ] 320 Assault, Libel & Slander<br>[ ] 330 Federal Employers' Liability<br>[ ] 340 Marine<br>[ ] 345 Marine Product Liability<br>[ ] 350 Motor Vehicle<br>[ ] 355 Motor Vehicle Product Liability<br>[ ] 360 Other Personal Injury<br>[ ] 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>[ ] 365 Personal Injury - Product Liability<br>[ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>[ ] 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>[ ] 370 Other Fraud<br>[ ] 371 Truth in Lending<br>[ ] 380 Other Personal Property Damage<br>[ ] 385 Property Damage Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881<br>[ ] 690 Other | [ ] 422 Appeal 28 USC 158<br>[ ] 423 Withdrawal 28 USC 157<br><br>**INTELLECTUAL PROPERTY RIGHTS**<br>[ ] 820 Copyrights<br>[ ] 830 Patent<br>[ ] 835 Patent - Abbreviated New Drug Application<br>[ ] 840 Trademark<br>[ ] 880 Defend Trade Secrets Act of 2016 | [ ] 375 False Claims Act<br>[ ] 376 Qui Tam (31 USC 3729(a))<br>[ ] 400 State Reapportionment<br>[ ] 410 Antitrust<br>[ ] 430 Banks and Banking<br>[ ] 450 Commerce<br>[ ] 460 Deportation<br>[ ] 470 Racketeer Influenced and Corrupt Organizations<br>[ ] 480 Consumer Credit (15 USC 1681 or 1692)<br>[x] 485 Telephone Consumer Protection Act<br>[ ] 490 Cable/Sat TV<br>[ ] 850 Securities/Commodities/ Exchange<br>[ ] 890 Other Statutory Actions<br>[ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR** | **SOCIAL SECURITY** | [ ] 893 Environmental Matters<br>[ ] 895 Freedom of Information Act |
| [ ] 210 Land Condemnation<br>[ ] 220 Foreclosure<br>[ ] 230 Rent Lease & Ejectment<br>[ ] 240 Torts to Land<br>[ ] 245 Tort Product Liability<br>[ ] 290 All Other Real Property | [ ] 440 Other Civil Rights<br>[ ] 441 Voting<br>[ ] 442 Employment<br>[ ] 443 Housing/ Accommodations<br>[ ] 445 Amer. w/Disabilities - Employment<br>[ ] 446 Amer. w/Disabilities - Other<br>[ ] 448 Education | **Habeas Corpus:**<br>[ ] 463 Alien Detainee<br>[ ] 510 Motions to Vacate Sentence<br>[ ] 530 General<br>[ ] 535 Death Penalty<br>**Other:**<br>[ ] 540 Mandamus & Other<br>[ ] 550 Civil Rights<br>[ ] 555 Prison Condition<br>[ ] 560 Civil Detainee - Conditions of Confinement | [ ] 710 Fair Labor Standards Act<br>[ ] 720 Labor/Management Relations<br>[ ] 740 Railway Labor Act<br>[ ] 751 Family and Medical Leave Act<br>[ ] 790 Other Labor Litigation<br>[ ] 791 Employee Retirement Income Security Act | [ ] 861 HIA (1395ff)<br>[ ] 862 Black Lung (923)<br>[ ] 863 DIWC/DIWW (405(g))<br>[ ] 864 SSID Title XVI<br>[ ] 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>[ ] 870 Taxes (U.S. Plaintiff or Defendant)<br>[ ] 871 IRS—Third Party 26 USC 7609 | [ ] 896 Arbitration<br>[ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>[ ] 950 Constitutionality of State Statutes |
| | | | | **IMMIGRATION** | |
| | | | | [ ] 462 Naturalization Application<br>[ ] 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
TELEPHONE CONSUMER PROTECTION ACT, 47 USC 227; 47 CFR 64.1200

Brief description of cause:
DEFENDANTS CALLED PLAINTIFF IN VIOLATION OF THE TCPA

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 39,000

CHECK YES only if demanded in complaint:
JURY DEMAND: [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____ DOCKET NUMBER _____

DATE   01/24/2023

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____1657 THE FAIRWAY #131, JENKINTOWN, PA 19046_____

Address of Defendant: _____502 WEST 7TH STREET, SUITE 100, ERIE, PA 16502,_____

Place of Accident, Incident or Transaction: _____BY TELEPHONE CALL TO MY PRIVATE TELEPHONE_____

---

**RELATED CASE, IF ANY:**

Case Number: _____  Judge: _____  Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____02/15/2023_____    *Must sign here* _____    PRO SE _____

*Attorney-at-Law / Pro Se Plaintiff*                          *Attorney I.D. # (if applicable)*

---

**CIVIL:** (Place a √ in one category only)

**A.** *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☑ All other Federal Question Cases
   *(Please specify):* _____TCPA_____

**B.** *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ANDREW R. PERRONG_____, counsel of record *or* pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☑ Relief other than monetary damages is sought.

DATE: _____02/15/2023_____    *Sign here if applicable* _____    PRO SE _____

*Attorney-at-Law / Pro Se Plaintiff*                          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)